**2026 UT App 121**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL RAY HALL,
Appellant.

Opinion
No. 20250089-CA
Filed August 6, 2026

Second District Court, Farmington Department
The Honorable Rita Cornish
No. 181701645

Edwin S. Wall, Attorney for Appellant

Derek E. Brown, David A. Simpson, and
Terry M. Crist III, Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY concurred.
JUDGE DAVID N. MORTENSEN authored a concurring opinion, in
which JUDGES RYAN D. TENNEY and JOHN D. LUTHY joined.

TENNEY, Judge:

¶1      Michael Hall was charged with one count of sodomy upon
a child and six counts of aggravated sexual abuse of a child. After
a seven-day jury trial, Hall was convicted of two counts of
aggravated sexual abuse of a child and acquitted of the remaining
counts. He now appeals his convictions, raising a jury unanimity

claim and an improper *Allen* charge claim.[1] For the reasons set forth below, we affirm.

BACKGROUND[2]

¶2 In the mid-2010s, Molly[3] lived with her mother (Mother) and older brother in Layton. Due to Mother's work schedule, she would take Molly and her brother to the house of their grandmother (Grandmother) in the morning; Grandmother would then take the kids to and from school and watch the kids at her house while Mother worked. Grandmother lived with Hall in what the couple considered to be a common law marriage. The two had been together since 2005, and Hall—who had known Mother's children "all of their lives"—was known as "Papa" to them.

¶3 In November 2017, which was during Molly's second-grade year, Prevent Child Abuse Utah came to her school and showed a video called "What To Do About Secrets." The video was intended to help children learn to recognize the signs of abuse and know to report such abuse to "trusted adult[s]." On April 24, 2018, Mother took Molly for a routine visit to her doctor. After the visit, when Mother and Molly got into the car, Molly told Mother

---

1. In *Allen v. United States*, 164 U.S. 492 (1896), the United States Supreme Court approved the use of supplemental verdict-urging instructions when a jury is deadlocked. Hence, such instructions are often referred to as "*Allen* charges." *See State v. Lactod*, 761 P.2d 23, 30 (Utah Ct. App. 1988) (upholding "the non-coercive use of *Allen* charges" as "a reasonable and proper exercise of the court's power to guide the jury to a fair and impartial verdict").

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Alires*, 2019 UT App 206, n.1, 455 P.3d 636 (quotation simplified).

3. A pseudonym.

that she was "being child abused by Papa." Mother immediately went back in to talk to the doctor, and she was instructed to call the Children's Justice Center (CJC) to arrange for an interview and exam, which Mother did the next day.

¶4    Based on Molly's allegations during the CJC interview, Hall was later charged with one count of sodomy upon a child (Count 1) and six counts of aggravated sexual abuse of a child (Counts 2 through 7). A seven-day jury trial was held in October 2024.

*Molly's Testimony at Trial*

¶5    At trial, Molly testified about the following incidents, which formed the basis for Counts 2 and 3.[4]

¶6    Molly testified that "the first time [she] remember[ed] being touched" was when she was in first grade. She had "just gotten home from school" when Hall "called [her] over and . . . told [her] to sit in his lap." When she did, Hall "put his hand down the front of [her] pants." She testified that "[t]his was in the TV room" and that Hall "was sitting in a black gaming chair that was leather and torn up." Molly testified that Hall "put his hand down the front of [her] pants under [her] underwear and put his hand really close to [her] vagina" and then "was touching [her] vagina" and "started wiggling his fingers back and forth." Hall "stopped . . . a little later" when Grandmother "called [Molly] into the other room for dinner."

¶7    The prosecutor then asked Molly if Hall "ever touch[ed] [her] genitals with his hand in a different location of the home other than on the gaming chair." Molly responded, "Yes, [he] did," and she then described an incident that "happened up in

_____

4. As will be noted below, the jury convicted Hall on Counts 2 and 3 but acquitted him on the other counts. Given this, we'll focus our factual recitation on the portions of Molly's testimony related to Counts 2 and 3.

[Hall's] bedroom." She testified that Hall had "told [her] to follow him upstairs" and "lay down on the bed once [they] got up to his room." Hall "was laying behind [her], and [she] was laying in front of him" on "the right side of the bed." Hall "took his hand, and he put it down the front of [her] pants like he did in the chair" and "started wiggling" his fingers "under [her] underwear and [her] pants," with his hand "touching [her] vagina."

*Jury Instructions*

¶8    On the fifth day of trial, the parties discussed proposed jury instructions with the court during a jury recess. Hall's counsel (Counsel) had proposed a unanimity instruction and clarified that this instruction was necessary because the jury must be unanimous on "the act and occasion as well as the other elements." During this discussion, the prosecutor acknowledged that "there are two counts where [Hall] touches [Molly's] . . . genitals" and suggested that the instructions "separate [the counts] to touching her genitals in the bedroom and touching her genitals . . . in the TV room" in order "to be as specific as" they could be. The court then asked Counsel if he "[had] any objection to doing that with respect to Counts 2 and 3," to which Counsel replied, "I think that's appropriate." The prosecutor responded, "So let's just do [Count 2] on the lap in the game room, and then [Count 3] would be up in the bedroom. I believe that's the order [Molly] discussed it."

¶9    Consistent with this discussion, the final jury instructions that were given to the jury included the following:

- **Instruction 34** told the jury that for Counts 1 through 7, "[w]hen determining whether [Hall] committed Sodomy Upon a Child and Aggravated Sexual Abuse of a Child, you must be unanimous as to which occasion and which act [Hall] committed for each count, and that the prosecution has proven all the elements for that count."

- **Instruction 35** stated that in Counts 2 through 7, the prosecution had charged Hall with committing aggravated sexual abuse of a child "multiple times." And it further stated, "You may not find [Hall] guilty of any count unless you unanimously agree the prosecution has proven the specific act in the elements of the offense for each count AND you unanimously agree the prosecution has proven all other elements of the count."

  Instruction 35 then laid out the basis for Counts 2 and 3 as follows:

  > "Count (2) is based on the alleged conduct of touching the genitalia of a child or otherwise taking indecent liberties with a child. The conduct was touching [Molly's] genitals with his hand in the T.V. room."

  > "Count (3) is based on the alleged conduct of touching the genitalia of a child or otherwise taking indecent liberties with a child. The conduct was touching [Molly's] genitals with his hand in the bedroom."

- **Instruction 40** set forth the elements for Count 2 as being, in relevant part, that Hall "touched [Molly's] genitals, even if accomplished through the clothing, while in the TV room."

- **Instruction 45** set forth the elements for Count 3 as being, in relevant part, that Hall "touched [Molly's] genitals, even if accomplished through the clothing, in the bedroom."

*Closing Arguments*

¶10 During the State's closing argument, the prosecutor referred to Instructions 40 and 45 when summarizing the portions

of Molly's testimony that formed the basis for Counts 2 and 3. Specifically, the prosecutor delineated the two counts as follows:

> Instruction 40 talks about what you would need to find in regards to when [Molly] is sitting on . . . Hall's lap, the defendant, in that gaming chair. And what does he do? He puts his hand down her pants and he touches her genitals.
>
> . . . .
>
> . . . [T]he next thing I want you to think about is [I]nstruction 45. It's important to know that there are two events where [Hall] used his finger and rubbed or wiggled or touched on the genitals of [Molly].
>
> One she described sitting in that chair, sitting in his lap . . . .
>
> Another time she discussed sitting up, they were laying on the bed. He's laying behind her. She's going the other direction. And he uses his hand to touch her genitals again.

*Jury Deliberation and Inquiries*

¶11    The jury began deliberations the morning after the parties delivered closing arguments. At 5:00 p.m. that day, the court summoned the parties to the courtroom and informed them that the jury had indicated that it had reached a verdict. Before calling the jury in, the court informed the parties that, during the course of jury deliberations, it had received three inquiries from the jury. The court explained, "Because they were pretty straightforward inquiries, I did not call counsel in." The court then read the jury inquiries and its responses to the parties.

¶12    As applicable here, the third inquiry had stated, "We cannot agree on one of the counts. If we are not unanimous on one count, would [that] be Not Guilty?" The court's response to the jury had been: "Your verdict must be unanimously Guilty or unanimously Not Guilty on a count by count basis. You should continue to deliberate on the count you are considering until all of you agree guilty or not guilty on that count."

¶13    After reading the jury inquiries and its responses to the parties, the court told the parties, "[T]he jury continued to deliberate after that last question and has now reached a verdict. Are there any questions before we bring the jury back in?" Counsel responded, "None from the defense."

¶14    The jury then returned to the courtroom and announced its verdict, wherein it convicted Hall on Counts 2 and 3 but acquitted him on all other counts.


ISSUES AND STANDARDS OF REVIEW

¶15    Hall appeals his convictions on two bases. First, he argues that the jury instructions did not properly distinguish between Counts 2 and 3 and did not require unanimity as to each count. "[W]hen a [jury instructions] challenge concerns whether the instructions correctly state the law, the issue presents a question of law reviewed for correctness." *Holmes v. Smith*, 2026 UT App 89, ¶ 20, -- P.3d --.

¶16    Second, Hall argues that the *Allen* charge that was given to the jury improperly coerced a verdict. But as explained below, we conclude that this issue is unpreserved and that Hall has not adequately invoked one of our preservation exceptions. We accordingly decline to reach the merits of this issue.

ANALYSIS

I. Jury Unanimity

¶17    The Unanimous Verdict Clause of the Utah Constitution requires that "[i]n criminal cases the verdict shall be unanimous." Utah Const. art. I, § 10. This means that "a jury must be unanimous on all elements of a criminal charge for a conviction to stand." *State v. Hummel*, 2017 UT 19, ¶ 29, 393 P.3d 314 (quotation simplified). And "when a defendant is charged with multiple offenses with identical or similar elements, unanimity as to the elements requires that the jury be unanimous regarding the specific act supporting the conviction." *State v. Chadwick*, 2024 UT 34, ¶ 32, 554 P.3d 1098 (quotation simplified); *see also State v. Baugh*, 2024 UT 33, ¶ 32, 556 P.3d 35 ("If the jury does not agree on which act relates to each count, then its verdict violates the Unanimous Verdict Clause.").

¶18    Here, in Instruction 34, the jury was instructed that for Counts 1 through 7, it "must be unanimous as to which occasion and which act [Hall] committed for each count, and that the prosecution has proven all the elements for that count." In Instruction 35, the jury was also given a specific unanimity instruction for Counts 2 through 7, where it was again instructed that it "may not find [Hall] guilty of any count unless [it] unanimously agree[s] the prosecution has proven the specific act in the elements of the offense for each count AND [it] unanimously agree[s] the prosecution has proven all other elements of the count." Further, Instruction 35 clarified that Count 2 was "based on the alleged conduct of" Hall "touching [Molly's] genitals with his hand in the T.V. room," while Count 3 was "based on the alleged conduct of" Hall "touching [Molly's] genitals with his hand in the bedroom." And this distinction was reiterated in Instruction 40 and Instruction 45.

¶19    Despite this, Hall argues that his convictions violated the Unanimous Verdict Clause because Counts 2 and 3 were "indistinguishable." Though a bit unclear, his argument appears

to be twofold: (1) the jury instructions did not properly instruct the jury that it needed to be unanimous on the acts that supported Counts 2 and 3, and (2) the jury instructions—along with the evidence offered by the State at trial—did not properly distinguish between the discrete acts that supported the two counts.[5]

¶20    "To merit reversal of a conviction on Unanimous Verdict Clause grounds, a defendant must show that a constitutional error has occurred and that error must be prejudicial." *Chadwick*, 2024 UT 34, ¶ 31. In cases where multiple acts are at issue, if the State has elected which specific act is linked to each count, our confidence in the unanimity of the verdict is generally not undermined. *See Baugh*, 2024 UT 33, ¶ 36 ("A unanimity problem can be remedied by prosecutorial election." (quotation simplified)). Moreover, even if the State fails to make such an election, the unanimity requirement is satisfied if the jury is "specifically instructed that it must be unanimous regarding both the conduct supporting conviction on each count and the defendant's guilt." *Chadwick*, 2024 UT 34, ¶ 45; *see also State v. Alires*, 2019 UT App 206, ¶ 22, 455 P.3d 636 ("Once the State failed to elect which act supported each charge, the jury should have been instructed to agree on a specific criminal act for each charge in order to convict.").

¶21    Both things happened here. First, the State made a clear election of which acts were linked to which count. During trial, Molly testified about two factually distinct episodes of genital touching—one that occurred "in the TV room" and another that occurred "in [Hall's] bedroom." During the discussion on the proposed jury instructions, the State elected to link Count 2 to the touching of Molly's genitals that occurred "in the TV room," and it elected to link Count 3 to the touching of her genitals that

---

5. The State contends that this issue is not preserved, but because the merits of this claim are easily resolved in the State's favor, we address it anyway. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415.

occurred "in the bedroom." Counsel agreed that such an election was "appropriate." In its closing argument, the State differentiated between the two counts on this same basis.

¶22 Second, the jury was given two specific unanimity instructions—Instructions 34 and 35—that unambiguously instructed the jury that it "must be unanimous as to which occasion and which act [Hall] committed for each count" and that it "may not find [Hall] guilty of any count unless [it] unanimously agree[s] the prosecution has proven the specific act in the elements of the offense for each count." Instructions 40 and 45 drew this same distinction, and indeed, the State referred jurors to these very instructions when summarizing the portions of Molly's testimony that formed the basis for Counts 2 and 3.

¶23 For these reasons, we see no reversible error with respect to Hall's unanimity claim.

## II. *Allen* Charge

¶24 "Utah law allows a trial court to give deadlocked juries a supplemental instruction called an *Allen* charge, in which it may impress upon jurors the importance of the case, urge them to come to agreement, and send them back for further deliberation." *State v. Weaver*, 2023 UT App 154, ¶ 22, 541 P.3d 958 (quotation simplified). "We have upheld the non-coercive use of *Allen* charges because we believe such charges to a be a reasonable and proper exercise of the court's power to guide the jury to a fair and impartial verdict." *Id.* (quotation simplified). We have also acknowledged that "there are legitimate purposes served by such a charge, namely, the avoidance of the societal costs of a retrial both in time and money, and the possible loss of evidence that a new trial would entail." *Id.* (quotation simplified). Thus, in Utah, *Allen* charges are "permissible . . . so long as [they are] not coercive." *State v. Bess*, 2019 UT 70, ¶ 58, 473 P.3d 157. In order to determine whether an *Allen* charge is coercive, we have developed a two-part test, "which requires us to consider whether (1) the language of the supplemental charge can properly be said

to be coercive per se, or (2) it is coercive under the specific circumstances of the case." *Weaver*, 2023 UT App 154, ¶ 23 (quotation simplified).

¶25 Here, at some point during jury deliberations, the district court received a note from the jury that read, "We cannot agree on one of the counts. If we are not unanimous on one count, would [that] be Not Guilty?" Without calling in the attorneys, the court provided the following response: "Your verdict must be unanimously Guilty or unanimously Not Guilty on a count by count basis. You should continue to deliberate on the count you are considering until all of you agree guilty or not guilty on that count." Hall now argues that the charge given by the district court was both coercive per se and coercive under the circumstances of the case. But on the state of the record and the appellate briefing, we have no occasion to address the merits of this claim.

¶26 "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (quotation simplified). "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Johnson*, 2017 UT 76, ¶ 15 (quotation simplified).

¶27 Hall's claim is unpreserved. As explained, when the district court alerted the parties to what it had done, Counsel did not object. Nor, for that matter, did he ask the court to give any additional instruction, order a mistrial, or do anything else to remedy any potential errors in the court's *Allen* charge. Rather, when the court asked the parties if they had "any questions" before the court brought the jury back in, Counsel replied, "None

from the defense." As a result, the challenge Hall now asserts on appeal is unpreserved.

¶28    Hall could, in theory, have asked us to review this claim under one of the recognized preservation exceptions. He could have argued, for example, that he received ineffective assistance of counsel because Counsel did not object or perhaps ask for a mistrial. *See id.* ¶ 19 (recognizing ineffective assistance of counsel as an exception to the preservation rule). Alternatively, he could have argued that because the district court did not inform the parties about what had happened until after the jury had reached its verdict, this issue would be reviewable under the exceptional circumstances doctrine, *see id.* (recognizing exceptional circumstances as an exception to preservation), or perhaps because such an objection would have been futile, *see State v. Ashcraft*, 2015 UT 5, ¶ 33, 349 P.3d 664 (recognizing that futility operates as "an exception to the general requirement of preservation"). Or, finally, Hall could have argued that the district court plainly erred by proceeding as it did. *See Johnson*, 2017 UT 76, ¶ 19 (recognizing plain error as an exception to preservation). But on appeal, Hall did not argue ineffective assistance of counsel, exceptional circumstances, or futility.[6] And for reasons that are unclear to us, in both his opening brief and reply brief, Hall

---

6. Hall did attempt to invoke the exceptional circumstances exception in his reply brief. But "[w]hen a party . . . raises [an issue] for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443. The same is true of preservation exceptions that are invoked for the first time in a reply brief. *See R4 Constructors LLC v. InBalance Yoga Corp.*, 2020 UT App 169, ¶ 29, 480 P.3d 1075 (holding that because the appellant "did not ask this court to consider the issue under an exception to the rule of preservation until its reply brief, it waived our consideration of any such argument"); *Marcroft v. Labor Comm'n*, 2015 UT App 174, ¶ 4, 356 P.3d 164 ("Because [the appellant's] first invocation of [an] exception to our preservation requirement appears in his reply brief, we will not consider it.").

affirmatively asserted that plain error review was unavailable for this claim.[7]

¶29     It is well established that if a claimed error is unpreserved, an appellant must assert a preservation exception in the opening brief. *See id.* ("When an issue is not preserved in the trial court, but a party seeks to raise it on appeal, the party must establish the applicability of one of [our preservation] exceptions to persuade an appellate court to reach that issue."). Here, Hall did not properly invoke any preservation exception, and we therefore have no basis for reviewing this claim. *See State v. Gallegos*, 2006 UT App 404, ¶ 19, 147 P.3d 473 (holding that because the appellant did not argue that any preservation exception applied to an unpreserved issue, "his argument fails on appeal").

CONCLUSION

¶30     For the reasons set forth above, we see no reversible error with regard to Hall's jury unanimity challenge. And because Hall's *Allen* charge challenge is unpreserved and he has invoked no exception to our preservation requirement, we decline to reach the merits of that issue. We accordingly affirm.

————————

MORTENSEN, Judge (concurring):

¶31     I fully concur in the opinion of the court. I write separately to highlight a significant breach of best practices the district court visited upon the parties.

¶32     The State concedes the verdict-urging instruction given here is infirm. In its brief, the State unequivocally admits that the

————

7. To be clear, we are not ruling that any of these preservation exceptions would or would not have applied. Rather, we're simply pointing out that while Hall could have invoked them, he did not do so in his opening brief.

*Allen* charge "was unbalanced." Accordingly, the State undertakes no effort whatsoever to defend the instruction, instead relying on other arguments to prevail in the appeal. The expenditure of all the resources reviewing this issue could have been *easily* avoided. Counsel could have, and really should have, been consulted.

¶33 The notion that counsel cannot contribute well-thought-out input to a supplemental jury instruction is short-sighted. And as a practical matter, seeking the input of counsel on an instruction shows wisdom on many fronts.

¶34 In multiple cases, defendants have claimed that answering a jury's question without the presence of the defendant and counsel violates the defendant's rights to counsel and due process guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See State v. Maestas*, 2012 UT 46, ¶¶ 72, 81–82, 299 P.3d 892; *State v. Dozah*, 2016 UT App 13, ¶ 21, 368 P.3d 863. And while such claims have generally not prevailed for procedural or other reasons, the reviewing courts in these cases have nevertheless admonished the bench against responding to jury notes without consulting counsel.

¶35 After concluding that a failure to consult counsel did not require reversal in *State v. Maestas*, our supreme court nonetheless stated:

> [W]e note that, even though the judge did not commit reversible error in responding to the jury's three notes, it is advisable for judges to inform counsel and disclose the contents of any jury notes on the record *before* providing a response. When a judge answers a jury's note without consulting counsel, the judge exposes the verdict to challenges that could easily be avoided. To protect a verdict and to respect a defendant's right to a fair trial, judges should inform counsel of each note they receive from the jury.

2012 UT 46, ¶ 94 (emphasis added). Similarly, in *State v. Johnson*, this court counseled:

> A court is not required to consult counsel before responding to a jury's question by simply referring the jury back to instructions already approved by counsel. However, such a course of action is risky because the court's response to a jury question may be construed as a new instruction. Responding to a jury's question without consulting counsel, while not in and of itself error, is a departure from the best practices for a court.

2016 UT App 223, ¶ 22 n.4, 387 P.3d 1048 (cleaned up).[8]

¶36 Given the well-developed Utah jurisprudence concerning verdict-urging instructions,[9] it is nearly certain that defense

---

8. To be sure, responding to a jury note with a substantive instruction may very well constitute error. *See State v. Maestas*, 2012 UT 46, ¶ 82, 299 P.3d 892 (observing that some courts have held that giving supplemental instructions regarding the elements of an offense and how a jury is to proceed when it is deadlocked constitutes a critical stage of the proceeding and implicates constitutional concerns).

9. *See, e.g., State v. Bess*, 2019 UT 70, ¶ 58, 473 P.3d 157 ("Utah courts have repeatedly upheld the use of deadlock instructions as a permissible way to guide the jury to a fair and impartial verdict, so long as the instruction is not coercive." (cleaned up)); *State v. Lactod*, 761 P.2d 23, 29–30 (Utah Ct. App. 1988) (formally endorsing the use of non-coercive *Allen* charges in Utah courts for the first time); *State v. Scott*, 2022 UT App 81, ¶ 21, 514 P.3d 590 (outlining the two-part test for determining whether *Allen* charges are coercive and are therefore impermissible); *State v. Clements*, 967 P.2d 957, 959 (Utah Ct. App. 1998) (noting that the two-part

(continued…)

counsel would have steered the district court here away from an unbalanced verdict-urging instruction. It is usually the case that counsel, when given the opportunity, will aid a trial court in avoiding error. Convictions vacated because of erroneous instructions are legion. *See, e.g.*, *State v. Chadwick*, 2024 UT 34, ¶¶ 2–3, 554 P.3d 1098; *State v. Eyre*, 2021 UT 45, ¶ 2, 500 P.3d 776; *State v. Baugh*, 2022 UT App 3, ¶ 27, 504 P.3d 171, *aff'd*, 2024 UT 33, 556 P.3d 35; *State v. Alires*, 2019 UT App 206, ¶ 1, 455 P.3d 636; *Dozah*, 2016 UT App 13, ¶ 39; *State v. Liti*, 2015 UT App 186, ¶ 28, 355 P.3d 1078; *State v. Irvin*, 2007 UT App 319, ¶ 21, 169 P.3d 798; *State v. Davis*, 2007 UT App 13, ¶ 1, 155 P.3d 909. Accordingly, when it comes to instructions on weighty matters, such as a verdict-urging instruction, failing to include the input of counsel is folly.

¶37   By the time a judge receives questions or notes from a deliberating jury, immense amounts of time, money, and emotional effort have already been invested—not to mention the significant burden placed on the jurors themselves. In light of

---

test is "triggered only when the trial court addresses a jury that has announced it is deadlocked or, at a bare minimum, has advised the court it is having trouble reaching a verdict" (cleaned up)); *State v. Harry*, 2008 UT App 224, ¶ 6, 189 P.3d 98 (recognizing various benefits of using non-coercive *Allen* charges, including "the avoidance of the societal costs of a retrial both in time and money" and "the possible loss of evidence that a new trial would entail" (cleaned up)); *State v. Weaver*, 2023 UT App 154, ¶ 25, 541 P.3d 958 (concluding in the ineffective assistance context that the defendant's counsel did not perform deficiently in stipulating to an *Allen* charge when it was not "coercive per se"); *State v. Cruz*, 2016 UT App 234, ¶¶ 65–66, 387 P.3d 618 (finding no error when the court gave the *Allen* charge prior to the jury's indication that it was deadlocked); *State v. Dalton*, 2014 UT App 68, ¶¶ 51–52, 331 P.3d 1110 (rejecting the defendant's argument on appeal that the *Allen* charge had to include language specifically informing the jury that it did not need to reach a verdict in order to be discharged).

such costs, trial judges should make every effort to prevent the possibility of retrial. Involving counsel in the process of answering jury notes is crucial for several reasons in this respect. Not only does it help ensure the jury receives the correct legal guidance, but it also protects against a do-over—thanks in significant part to legal concepts like waiver and invited error. Beyond these practical benefits, consulting counsel is simply the right thing to do.

¶38    Given the overwhelming wisdom of consulting counsel in such situations, mere inconvenience seems to be driving the decision to do otherwise. But it only takes a few minutes to get counsel on the line. And in this day of digital court recording and cell phones, the slight inconvenience of putting jury questions and proposed answers, including objections, on the record, and avoiding error through consultation of counsel, is hardly burdensome. In the future, I hope that trial courts will more circumspectly consider consulting counsel prior to answering a note from a deliberating jury.

—————